Good morning, Your Honors. Tim Scott for the appellant, Luiz Baptista. I'd like to start this morning with the question of the withdrawal of the plea and whether there was a fair and just reason to do so under this court's precedent. Legally this is not supposed to be a particularly high hurdle for a moving party to overcome, particularly when the motion is made post plea but pre sentencing. Our case law describes it as a generous standard to be applied liberally and this is true even if the rule 11 colloquy is otherwise perfectly valid. Now factually there's no dispute as I understand it that the government withheld certain facts until after Mr. Baptista pled guilty and so there were concrete things that he could point to as either newly discovered evidence or a change in circumstance that he cited as motivating his motion to withdraw the investigation who had first reported him to the FBI and worked throughout the course of an entire summer, it seems, to gather evidence against him and then was later compensated to the tune of $8,000 after Mr. Baptista went to jail. Those were important facts and I don't think it's overstating it to say that any criminal defendant would want to know those facts, would want to know that it was their own spouse who was building the case for the government before making the decision to plead guilty. Now Mr. Scott they're gonna, the government's gonna stand up and say well that's not the standard we should apply today because there was a plea agreement in this case and your client waived the right to appeal. Why aren't they right on that? Well there's three reasons why this withdrawal of the plea issue isn't barred by the plea agreement. The first is that at the end of the sentencing Judge Guilford told Mr. Baptista if you wish to appeal you must do so within 14 days. That wasn't ambiguous where he said you may have the right to appeal or I don't know if you have the right to appeal. He said if you wish to appeal do so in 14 days. I think that fits within our case law which says that if the if the trial court indicates to the defendant that they do have the right to appeal then the defendant can can fairly rely upon that. The second reason beyond being advised by Judge Guilford is that even if we do apply the plea agreement there is still the question of art in the context of pleading guilty. It needs to be a voluntary and intelligent decision made among the available options. Did he have a right to know that is that his wife had been informing on him? If he had a right to know under discovery I think we could probably I think we could probably debate both sides about whether there was either a rule 16 right at that point or a Brady right. Maybe maybe not not not to be evasive but the reason I wonder about the whole marital privilege and whether he could have I mean asserted that or well it's certainly one of the reasons that he moved to withdraw the plea and what I was winding up to I didn't mean to sidestep the court's question is that whether or not he had an absolute right to that information the question really is is the revelation of that information a fair and just reason to withdraw the plea or is it a plausible basis for him to want to make that decision and so you know setting aside whether the government should have turned it over earlier or should not have I don't think we necessarily need to answer that question because the fact is this is a plausible reason for him to want to withdraw the plea in a fair and just basis for doing so. The third reason in terms of why the plea is not is not waived there was the the advisal by Judge Guilford the voluntariness it's simply not a voluntary and an intelligent waiver of the right to appeal if he hasn't been apprised of all his options he was he was deprived of key information and and had unequal bargaining information in entering into that plea agreement. But I think our the old Ninth Circuit case law might agree with you but after Ruiz in the Supreme Court it seems you've got to explain why Ruiz doesn't shut you down on that. Well the reason would be that we've also framed this as a breach of the government's duty of good faith and fair dealing and so mr. Baptista in our view reasonably felt somewhat like the victim of a bait-and-switch wherein he pled guilty to a fairly benign factual basis that gave rise to guidelines of six to twelve months and after revealing this information from the ex-wife the government sought a 12 level enhancement now granted the government could argue outside the guideline range and could ask for upward adjustments that was in the plea agreement but 12 levels and analogizing those levels to attempted murder is simply so far beyond the the expectation of mr. Baptista that I think it's tantamount to sharp practice and doesn't comport well with the government's duty of good faith and fair dealing. Now counsel I could see your argument as to counts two and four because those were after the contact with the wife but counts one and three as alleged in the indictment into which your client pled were before any contact with the wife so I understand the argument for counts two and four but for counts one and three how do we undermine counts one and three when the activity was before the wife ever contacted the FBI? Well I guess there's a factual answer and a legal answer factually that's the way the record sits right now because that's the way that the government gave us the information afterwards what mr. Baptista wanted to do was to take investigation take discovery and start building the factual record to find out satisfactorily through cross-examination through the government's rule 16 obligations once we're asking for the right things we suspect that we might have been able to change that timeline so I'm not comfortable saying that the government's version of events is is etched in stone because it's simply what the government chose to give us at the last moment so we think that we would have been able to change that factual record substantially had we been given the opportunity to do so but legally it's still a matter of bargaining power and of the deal that he struck he if if he had a bulletproof defense or even a plausible defense which is the test to the latter two counts to counts two and four that may have changed the calculus of whether he bargaining power he would have been able to drive a better bargain it wouldn't necessarily have had to plead to those things or at least could have asked the government to give him better concessions on those particular those particular facets of his plea the error that in our view judge Guilford made was similar to the errors that were made in McTiernan and in Garcia the record reflects that judge Guilford put a great deal of stock in the fact that mr. Baptista according to the judge was taking a position that was contrary to what he said in open court and under oath and the court several different times italicized open court and under oath in its quarter denying his motion and I would respectfully submit that that's simply a misunderstanding of mr. Baptista's position and of the governing law mr. Baptista wasn't trying to undermine the the thoroughness of the rule 11 colloquy or disparage judge in the care in which he took the plea he was simply saying I know something now that I didn't know then and had I known then what I know now I wouldn't have entered the plea so the thoroughness of the rule 11 colloquy and the penetrating care that judge Guilford took as he described in his order is simply entirely beside the point and more than being beside the point it was legal error we would suggest to for the court to hang its hat on that it was equally legal error for the court to get into a kind of a fine gauge evaluation of the merits it at least approached a factual finding about whether the ex-wife was an agent of the government I'm not sure he went so far as to say it's a factual finding but he at least suggested that mr. Baptista would have trouble with that the merits are not the issue they weren't the issue on the title 3 wiretap in the McTiernan case and they weren't the issue on the st. seer issue in the Ortega case the question is not whether Baptista would win it's not whether they were meritorious and would carry the day it's not whether there was even good arguments on the other side the question was is it simply a plausible reason that at least would have plausibly motivated him to reconsider and to do something different than the decision that he made so with that I'll try to reserve a minute for rebuttal thank you so much honest thank you you morning may it please the court Scott Tenley for the United States I want to start with the waiver issue that we began with and I would note the advisement from Judge Guilford is virtually identical to an advisement this court considered in 2015 in a case called the United States versus Basulto now that's a memorandum decision but the court looked at an advisement of appeal that said if you wish to appeal this sentence it has to be done within 14 days and that did not vitiate the appellate waiver and also important in that case was the fact that there was no statement that the defendant had a right to appeal which we see in the other cases like Buchanan and Felix so I don't think the appellate waiver is waived with respect to voluntariness this has always been a question at the district court and in the briefs about whether the defendant had a fair and just reason he never raised the question of voluntariness until the government raised the appellate waiver and the issue of voluntariness is whether the defendant knew everything about his options or whether he was coerced under duress or had had a promise made to him that wasn't fulfilled none of those happened here and I think your honor is right in Ruiz the Supreme Court made clear that the defendant doesn't have to fact available to him he just needs to make a reasonable choice among his options so on that basis I do believe the appeal on the motion is waived you have a case that's comparable to this I mean it seems to me this is a rather unusual case where he finds out later that his wife who he had been trusting with all the details of what his plans were down in Brazil had been talking to the FBI all along do we have a case that's some any where it was close to this not that I can say to you your honor but I what I think I want to draw is a factual distinction here in discovery we produced statements that the wife made to the FBI when they executed a search warrant and in that report she laid out the defendant's entire plan what he was going to use the items for and what he intended was that pre-entry of the plea agreement yes that was before the entry of the plea agreement after the plea agreement we produced two facts that were new one is that she was the original tipster and then the relocation payment that was made two months after she made the tip so not only did we produce in discovery her statements and the theory of the but we also argued and litigated that theory in response to the defendant's necessity motion so this isn't a case where the defendant was blindsided by this theory that came out of the blue he knew that was the government's theory and he also knew in the plea agreement he didn't have protections to limit his sentence so there was no breach of good faith or fair dealing in that regard with respect to the marital privilege that you raised your honor we cited the brief the government is allowed to use statements of a spouse to investigate and apprehend a suspect and to obtain a search warrant so while there are marital privilege kind of issues floating around the case on the front end there would be no relief for the defendant we still could have investigated prosecuted and executed the search warrants on the basis of those statements so you're saying that it wasn't a surprise to the defendant that the government such such a substantial enhancement based on the the conduct that wasn't charged he certainly had no notice of what the requested sentence would be that that was a decision we made and put in our papers but during the necessity litigation not only did we brief our theory but there was discussion about the fact that there's case law from the circuit that says motive in a passport fraud case can be a grounds for an upward departure and I with judge Guilford in the hearing so there certainly was a sense from the government that was communicated in those hearings that this wasn't a typical passport fraud case that the fact that this was going to be used to commit murder in a foreign country with something that we thought was very serious and dangerous on the the one last thing and then and then I'll move on is that the issue of the tipster and the relocation payment only applies to and for counts one and three is as judge Owens pointed out were committed on June 3rd 2015 it wasn't until six weeks later that miss Baptista first came in miss Christensen excuse me first came in and reported the defendants conduct now mr. Scott's point was that potentially there's more discovery on that issue but I'd refer the court to page 146 of the record it's a walk-in complaint from the defendant's wife at the FBI it's documented that that's how we learned about it and so I think it's pure speculation that there's anything prior that would have changed the view on counts one and three is that why er 146 is not a 302 correct now the report we produced in connection with the with respect to the necessity issue I think the most glaring deficiency here is the legal alternatives issue the defendant can not commit a crime when he has a lot of other choices available to him and here the most obvious one is to call the Brazilian police and he didn't want to do that because he thought the children would end up in a group home and that every group home in the in Brazil is run by pedophiles that's his subjective view but the question is what would a reasonably objective jury say there and because that Avenue is available to him his it was unreasonable for him to say I can't avail myself of it and as I understand your argument he also could have just traveled to Brazil on his Brazilian passport he just didn't want to because of potential immigration consequences here that's right now his passport expired on May 3rd so he had that legal Avenue to travel up through May 3rd after that he could have abandoned his US citizenship application and traveled there was nothing keeping him in he wasn't in custody he had options to go down himself on top of that he had the United States State Department that could have performed a welfare and whereabouts visit and he was involved in Hague Convention proceedings he was kind of obviously and reasonably frustrated and impatient but that doesn't give him the ability to violate federal law in that prong that I touch on is the imminent harm and certainly when you have your children in danger that is understandable that any father is going to be upset but the proffer here was insufficient for judge Guilford to find that element was met because all we have is things about emails about tantrums emails about arguments and then an unspecified plan that the wife the children's mother might move them to Europe and so it's not that immediate emergency that would cause the defendant to have an excuse for violating federal law one of the examples we see in the case law is can a prisoner escape a prison if it's on fire and the answer is yes because that is an imminent immediate threat to his health and safety but here there were another a number of other options and there were also there wasn't an immediate harm that he had to justify by violating the law so on that basis unless the court has questions I'll submit all right thank you counsel thank your honors a couple quick points mr. Baptiste that absolutely was blindsided by this revelation the government's suggestion in the prior litigation about the wife's testimony was contradicted by her own statements that she was making to him simultaneously she was apparently playing both sides and telling him one thing in the jail and telling him that the FBI was pressuring her and and that you know would you please plead guilty and because he was missing the key information about her compensation and the fact that she was the original tipster he believed her and he simply didn't put stock in what the government disclosed without telling the entire story that she was the tipster and that she was on the payroll so he didn't have that expectation he believed his wife at the time that she was talking to him while still working with the government that that was the key problem and the key missing information this isn't a question of knowing all the facts like the Ruiz case this is a question of having a reasonable opportunity to weigh the available options and it's not a knowing decision among options it would have been the options like what what changed once he found out the identity of the informant well the options would have been pursuing an entrapment defense what whether just on the last two counts or whether on all of them depending on how far the timeline would have reached back in terms of the cooperation it would have been potentially an outrageous government conduct motion particularly when coupled with what we felt was a Messiah violation for having her continue to meet with him and report back to the government while he was in custody it also gave rise to a Frank's challenge to the search warrant to other motions practice including marital privilege that he would have wanted to raise so he would have wanted to at least explore those things again would they have carried the date perhaps but he had the right to explore them and to decide whether or not he wanted to do that rather than the plea that he took and finally I know I'm over but in terms of the waiver the government cited an unpublished opinion about this language if you wish to appeal you must do so another person if you wish to have lunch please let me know by 11 that person would think they're invited to lunch and if they let them know by 11 and the person said oh sorry I never invited you to lunch that would just not comport with kind of normal language and a person's reasonable expectations so I don't think there's a waiver here thank you very much thank you very much counsel us versus Baptista will be submitted
judges: Wardlaw, Nguyen, Owens